## Horace and Zade Norton v. Commonwealth.

(Decided October 17, 1922.)

### Appeal from Rockcastle Circuit Court.

1. Homicide—Self-Defense—Instructions.—In a case of homicide, an instruction on the law of self-defense should not be qualified by the addition thereto of language telling the jury that an accused could not avail himself of such defense, or another be excused for aiding him in the killing, if it occurred in a mutual combat, or in a fight or difficulty brought on by the accused's first attacking the deceased, unless there is evidence in behalf of the Commonwealth conducing to prove that the killing occurred in a mutual combat or in a fight or difficulty brought on by the accused's first attacking the deceased. As in this case there was a total absence of such evidence, the qualification by the trial court, of an instruction as to the law of self-defense, in the manner stated, is reversible error.

2. Homicide—Joint Trial Under Indictment for Murder.—Where on the joint trial of two brothers under an indictment for murder, it was shown by the evidence that one of the brothers took no part in the difficulty or shooting resulting in the killing of the deceased, until after the shooting began between the deceased and the other brother, but then assisted the latter by participating in the shooting in which he was engaged with the deceased, and thereby killed or aided in killing the deceased, he is or would be excusable or not for the killing, according as the brother whom he assisted would be innocent or guilty, had he alone done the killing.

C. C. WILLIAMS and S. D. LEWIS for appellant.

CHAS I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Settle—Reversing.

Upon their joint trial in the Rockcastle circuit court, under an indictment charging them with the murder of Walter Rice, whom they admittedly shot and killed, the appellants, Horace Norton and Zade Norton, brothers, by verdict of the jury and judgment of the court, were each convicted of the lesser crime of voluntary manslaughter, and the punishment of each fixed at confinement in the penitentiary seven years. They, jointly and severally, moved for a new trial in the court below supported by the same grounds, the overruling of which motion as to each resulted in their prosecution, jointly and severally, of the present appeal.

The grounds urged for the reversal of the judgment of the circuit court are, that it erred to the prejudice of the substantial rights of the appellants: (1) In giving the jury the instruction marked "No. 4;" (2) in permitting misconduct on the part of the Commonwealth's attorney in argument to the jury; (3) in admitting incompetent and excluding competent evidence.

Counsel for appellants makes no complaint of the other instructions given the jury by the court, but he insists that instruction No. 4, by reason of its modification respecting the law of self-defense, as previously correctly stated therein, was unauthorized by the evidence, misleading to the jury and, consequently, highly prejudicial to the appellants. Without the qualification referred to the instruction was as follows:

"Although you may believe from the evidence beyond a reasonable doubt that the defendants, Horace Norton and Zade Norton, shot and wounded the deceased, Walter Rice, with a pistol or pistols, from which shooting and wounding the said Rice did die within a year and a day thereafter, yet if you shall believe from the evidence that at the time they did so, if they did so, they believed and had reasonable grounds to believe, that the defendant, Horace Norton, was then and there in immediate danger of death or the infliction of some bodily harm at the hands of the deceased, Walter Rice, then the defendants each had the right to use such means as reasonably appeared to them to be necessary to avert said danger, real or to the defendants reasonably apparent, even to the extent of so shooting and killing of said Rice, in this event, you should find the defendants not guilty on the ground of self-defense, or apparent necessiay therefor, as to the defendant, Horace Norton, and upon the ground

of the defense of Horace Norton, or apparent necessity therefor, as to the defendant, Zade Norton.''

The qualification of the foregoing part of the instruction was added by the court in the following language: ''Unless you shall further believe ·from the evidence beyond a reasonable doubt that the defendant, Horace Norton, and the deceased, Walter Rice, mutually and voluntarily entered into the actual combat with the intention upon the part of each to kill the other, or do the other some great bodily harm, in which event you cannot acquit either of the defendants upon the ground of self-defense or apparent necessity, or the defense of another, to-wit: Horace Norton, or apparent necessity therefor.''

Whether the instruction should have been qualified as indicated is a question that must be determined by the evidence heard on the trial, from which it appears that several months prior to the homicide a difficulty, from some cause unexplained, occurred between the appellant, Horace Norton, and Walter Rice, the deceased, which, without resulting in an encounter, led to such enmity between the parties that it for a considerable time prevented any friendly intercourse between them when they chanced to meet, during which period the deceased repeatedly made to others threats against the appellant, Horace Norton. However, this ill-feeling seems to have so far subsided that on more than one occasion, shortly before the homicide, they were heard to pass the greeting customarily used by acquaintances upon meeting.

The homicide occurred at the store of one Robert Nicholls, near the village of Pongo, about ·twilight of the day on which the November election, 1921, was held. Pongo was the voting place of the precinct in which the parties to the homicide resided. The deceased arrived at Pongo early in the morning of the election and remained until late in the afternoon and was drunk, or to a great extent under the influence of intoxicating liquors, throughout the day. He was by reputation, indisputably established by the evidence, notoriously a person of violent temper, quarrelsome disposition, a producer of difficulties and desperate fights. The appellant, Horace Norton, also attended the election in question but did not get to Pongo until late in the afternoon, certainly not earlier than three o'clock. He was not then drunk, and though drinks of liquor admittedly

were taken by him that day, the evidence fails to show that he was at any time during the day in an intoxicated condition. Shortly after his arrival he and others saw Rice, the deceased, approach and begin a conversation with Dick Price, an aged cripple, and heard him boast to the latter in language appearing in the bill of evidence, but too indecent and vile to be reproduced in an opinion of this court, of illicit conduct he claimed had occurred, and would again occur, between Price's daughter and himself, these statements being accompanied by oaths and much abuse of Price; also, threats of what he would do to him if he interefered with his plans respecting the daughter. In the midst of all this tirade Horace Norton asked Rice to quit his abuse of the old man. Whereupon Rice said to him: "What in the hell have you to do with it?" To which Norton replied: "Nothing, but I respect old gray hairs and ladies." Rice then said: "God d—you, I will make you have something to do with it," and immediately started toward Norton with an open knife in his hand. Norton commanded Rice at least twice to stop, which he failed to do; thereupon Norton drew from its place of concealment on his person a pistol, cocked and presented it, and told Rice that if he did not cease advancing upon him he would shoot him. This stopped the advance of Rice and Norton then put up his pistol, walked to another part of the ground and did not again come in contact with Rice while at Pongo. The latter, however, went at once to a friend of his, Hamp Mize, from whom he obtained a pistol, which he had in his possession when killed. Very soon after the difficulty between Horace Norton and Rice referred to, Horace and Zade Norton mounted the mules upon which they had ridden to Pongo and together started for their respective homes, accompanied by their cousin, Letcher Norton, and James Doan, the former riding behind Zade and the latter behind Horace Norton, Doan intending to ride with the other parties as far as Nicholl's store, which they passed on the way home.

It is patent from the facts furnished by the evidence thus far considered, which we find to be uncontradicted, that the appellant, Horace Norton, manifested no disposition to take the life of Rice, the deceased, or engage in a fight with him before leaving Pongo. On the contrary, his getting into the difficulty there with Rice seemed accidental rather than intentional, and the manner in

which he confined the use of his pistol to the stopping of Rice's assault upon him with the knife, together with his quiet withdrawal from the difficulty when the attack of the latter upon him ceased and quick departure for his home, indicated not only an apparent unwillingness on his part to kill Rice, but also a purpose to avoid any renewal of the difficulty with him.

On the other hand, the evidence as to the occurrences at Pongo present the conduct of Rice in a different light, for it not only shows him to have been the aggressor in the unfortunate events that there took place before the departure of the Nortons, but also that he continued the aggressor by immediately himself taking horse, following Horace Norton and renewing with him the difficulty that had just ended at Pongo without bloodshed. His purpose in thus acting and the motive are shown by the haste with which he acted and the threats he was heard to make against Horace upon leaving Pongo and while the departing Nortons were still in view. To the witness, Dock Nicely, he then said of Horace Norton, "I'll kill the G— d— son of a b—," and to the witness, Joe McClure, "I'll make that G— d— Horace Norton eat his pistol." There was no attempt made to contradict the above named witnesses.

What occurred after Rice overtook the Nortons appears from the uncontradicted testimony of the three Nortons and James Doan. Upon overtaking the party, Rice rode his horse between those of Horace and Zade Norton, saying in substance he was going their road too, although to take that unaccustomed road to his home would carry him more than a mile out of the way. Immediately after joining the Nortons, the party arrived at the road he (Rice) should have taken to go to his home, where he was advised by Doan, who feared a renewal of the difficulty between Rice and Horace Norton, that he had better go home, his wife might be looking for him. Rice, however, refused to do so, saying: "By G—, I don't have to, I will go any d— way I want to and come back when I get ready." Rice, after making the above statement, rode on with the party toward Nicholl's store, but continued in an angry mood, which he expressed in frequent oaths and by drawing his pistol and making demonstrations as if about to shoot Horace Norton, seeing which Horace said to him: "You are not going to slip around and shoot me are you?" Rice's response to this

was: "I've got enough nerve to use my gun any time, anywhere." Horace then said to him: "Let's not have any trouble; cut that out." While making this statement the latter drew his pistol, but made no attempt to use it. The parties, except Doan, who left them at the point where he advised Rice to go home, rode on to Nicholl's store, where they found Mrs. Nicholls and Hamp Mize, both of whom came out in front. According to the testimony of Mrs. Nicholls, Mize, the appellants and Letcher Norton, when the store was reached all of the horsemen dismounted, at which time Horace Norton put up his pistol and pulled towards the withers of his mule the saddle and blanket upon which he had been riding. After Rice dismounted he stood with his hand on his pistol near Horace, at whom he was swearing and angrily talking, to which Horace made little reply. At this juncture Mrs. Nicholls, fearing trouble, placed her hand on Rice's arm and begged him to be quiet; but he refused to be quieted. Hamp Mize then said: "Boys, quit this and don't have a racket; come in the store and let's have a set up." In response to this proposal Horace, turning to Rice, said: "I'll buy a dime's worth of peanuts; will you be satisfied with it?" Rice did not reply, but Horace started to follow Mize into the store, into which Mrs. Nicholls and Zade Norton had previously gone, the latter to purchase some flour. Rice and Letcher Norton remained outside. After Horace Norton started to enter the store, Rice, who was in his rear or at his side, shot at and wounded him in the hip; whereupon Horace drew his pistol, shot at Rice and immediately ran upon and grappled with him. They fell upon the ground struggling and exchanging shots. Zade Norton, after the first shot, ran out of the store and seeing Horace on the ground in what appeared to be a death struggle with Rice in the defense, as he claimed, of the former, drew his pistol and shot several times at the latter. The shooting resulted in the death of Rice, and the infliction of two or three wounds upon the body of Horace, the one in the hip being sufficiently serious to confine him at home for two months.

We think the synopsis of the evidence herein set forth fairly presents all the material facts relating to the homicide in question, and we are unable to see that they furnish any ground for the modification of instruction No. 4, as done by the trial court.

In a case of homicide an instruction on the law of self-defense should not be qualified by the addition thereto of language telling the jury that the accused could not avail himself of such defense, or another be excused for aiding him in the killing, if it occurred in a mutual combat, or in a fight or difficulty brought on by the accused's first attacking the deceased, unless there is evidence in behalf of the Commonwealth conducing to prove that the killing occurred in a mutual combat or in a fight or difficulty brought on by the accused's first attacking the deceased. Hickey v. Com'lth, 185 Ky. 570; Wilson v. Com'lth, 23 R. 743. In Bailey v. Com'lth, 181 Ky. 468; Morgan v. Com'lth, 188 Ky. 458; Bowling v. Com'lth, 144 Ky. 59, and other cases it was held that such a qualification of an instruction respecting the law of self-defense as that contained in instruction 4, in the instant case, was proper, because authorized by the evidence in each of those cases. But in each case the principle was recognized that, in the absence of evidence authorizing it, the giving of the qualification would be reversible error.

In 29 Cyc., p. 257, a "mutual combat" is said to be: "A combat in which both parties willingly enter." In Wilson v. Com'lth, *supra*, a "mutual combat" is defined as follows:

"What the law designates as mutual combat is where two persons upon a sudden quarrel and in hot blood, mutually fight on equal terms. It does not cover a state of case where combat was sought by one or more parties for the purpose of killing or inflicting great injury on the other. . . . The law does not require that one who has been attacked by another with a deadly weapon, or has made demonstrations manifesting an intention to commence an attack, to retreat, but he has the right to stand and defend himself; and if in so doing it becomes necessary, or upon reasonable grounds apparently necessary, that he should kill his assailant, the killing is excusable on the ground of self-defense."

In the case at bar the evidence falls as far short of showing that the appellant, Horace Norton, commenced or brought on the encounter resulting in the killing of the deceased, as it does of showing that the death of the latter resulted from a mutual combat between the parties.

We may, therefore, say of the qualification given instruction 4, by the trial court, what was said in Hicks v.

Com'lth, *supra*, of an instruction, containing a similar qualification, given in that case, that it:

"Has no place under the facts of this case.'  . . . There is nothing in the testimony tending to show in the slightest degree that defendant commenced the difficulty by shooting at the deceased, or that the meeting was the result of any mutual consent to engage in an armed conflict so as to limit the right of self-defense on the part of the defendant."

While, according to all the evidence, the deceased was the aggressor in the difficulty in question from its beginning at Pongo to its ending at Nicholl's store, and at the latter place took the initiative by directing at Horace Norton, as he was leaving his presence to enter the store, the first of the several shots that were fired, it nevertheless remained for the trial court to submit to the determination of the jury the single issue of fact as to whether the killing of the deceased by the appellants, or either of them, was necessary, or reasonably appeared to them to be necessary, to protect Horace Norton from immediate death or great bodily harm at his hands. But this issue of fact, as we have shown, was not properly submitted to the jury; for though the law controlling its decision was correctly stated in the first part of instruction 4, the qualification added thereto by the trial court made the instruction, as a whole, erroneous, misleading and highly prejudicial to the substantial rights of the appellants. Instructions that are not predicated upon the facts of the case, however accurate their statement of the law in the abstract, should never be given. Thomas v. Com'lth, 195 Ky. 624; Brenn v. Com'lth, 169 Ky. 815. With the qualification it contains omitted, however, instruction 4 properly may be given on another trial.

It does not appear from the evidence, nor is it claimed for the Commonwealth, that the appellant, Zade Norton, was in any way involved in the altercation between his brother Horace and the deceased prior to the shooting at Nicholl's store. But it is both shown by the evidence and conceded for the Commonwealth that his participation in the shooting began after there had been an exchange of pistol shots between the deceased and Horace, and that the part he then took in the shooting was in aid of and to protect the latter. Obviously, in such a state of case, what would excuse the shooting or killing of the deceased by Horace Norton would excuse Zade Norton

for assisting Horace in the shooting or killing. In other words, if, in participating in the killing, Zade killed the deceased in defense of Horace, he (Zade) is excusable, or not, according as Horace would be innocent or guilty, had he done the killing without assistance from Zade. McIntosh v. Com'lth, 29 R. 1100; Utterback v. Com'lth, 105 Ky. 223. By eliminating from instruction 4 the qualification erroneously added thereto by the trial court, it will with substantial accuracy state the grounds upon which interference and action on the part of Zade Norton in defense of his brother, Horace, would be justifiable.

The complaint of alleged misconduct of the Commonwealth's attorney, raised by appellants' second contention, may briefly be disposed of. The alleged improper statements constituting the alleged misconduct were made, it is claimed, by the Commonwealth's attorney in the closing argument to the jury. These statements are in part set forth in ground 6, filed with and in support of the motion for a new trial, but appear in full in the bill of exceptions; and as we must be controlled by the latter, when the statements as therein set forth, with the circumstances that appear to have attended their utterance, are considered, it is apparent that they were provoked by and made in response to statements, outside of the record, emanating from appellants' counsel in a previous argument to the jury. It may well be questioned whether the appellants were seriously prejudiced in any substantial right by the statements referred to, the failure of the court to exclude them, or to reprove the Commonwealth attorney for making them. We do not think the second error complained of sufficient, of itself, to compel the reversal of the judgment. Indeed, in several cases we have, for like cause, refused the reversal of a judgment of conviction, and even declared that: "The objection to an improper argument by the attorney may be cured, when it was only in reply to another one made by the opposing counsel in discussing the same feature of the case." Welch v. Com'lth, 189 Ky. 579.

We, however, deem it proper to add that, as the judgment in this case must be reversed because of the error pointed out in instruction 4, on another trial such statements as those referred to, whether made by the Commonwealth attorney or the opposing counsel, should not be indulged in or allowed.

Consideration of the third and final ground urged by the appellants for the reversal of the judgment has convinced us that the trial court erred in a few of its rulings regarding the evidence complained of. It appears from the evidence that both Walter Rice, the deceased, and the appellant, Horace Norton, had been confined in the penitentiary, each under conviction of felony. Counsel for appellants complains that the court permitted the attorney for the Commonwealth to prove this fact as to the appellant, Horace Norton, by asking and obtaining of the latter, on cross-examination, an admission of his conviction of a felony and confinement therefor of two years in the penitentiary, but excluded evidence as to the character of the felony. There was no error in this ruling. It was competent to prove the fact stated by the admission of Horace Norton as a witness, as it went to support the attack made by the Commonwealth upon his reputation for the purpose of discrediting him as a witness. The court erred, however, in permitting, as it did, proof, or attempted proof, from other witnesses as to particular conduct and acts on the part of Horace Norton for the purpose of showing that his moral character was bad. This, as well as his lack of veracity, if there was such lack, could only properly be shown by proof of his general reputation as to both among those to whom it was known. Other rulings, both in admitting and excluding evidence, are complained of, but we have not found any of them sufficiently material to be prejudicial to the appellants, hence time will not be spent in discussing them. In all such cases as this there will be found error, particularly in the matter of admitting and rejecting evidence. But unless the errors are of such character as to prejudice the defendant in some substantial right to such extent as prevented him from receiving a fair and impartial trial, they will not authorize a reversal of the judgment; the errors last mentioned are not of that character.

Because of the error in instruction 4 the judgment is reversed as to each appellant and cause remanded for another trial, not inconsistent with the opinion.