Glenn **ROBERTS**, Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.
Oct. 28, 1960.

Robert R. R. Boone, John J. Tribell, Pineville, William S. Tribell, Middlesboro, for appellant.

John B. Breckinridge, Atty. Gen., William A. Watson, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

The appellant, Glenn Roberts, was convicted and sentenced to 21 years' imprisonment under an indictment charging him with armed assault with intent to rob (KRS 433.150). He contends on this appeal that the trial court erred in refusing to grant a continuance; that the evidence was insufficient to support the verdict and he was entitled to a directed verdict; that there was a fatal variance in the indictment, evidence and instructions; and that the instructions were erroneous.

The statute, KRS 433.150, makes a capital offender of any person who "with an offensive weapon or instrument, unlawfully and maliciously assaults another, *or who in any forcible and violent manner* demands any money * * * or other thing of value from any person, with an intent to rob or commit a robbery upon him." (Emphasis added.)

The indictment alleged that on March 17, 1960, the defendant and an unknown accomplice unlawfully, wilfully, feloniously, and maliciously, with force and arms by use of deadly weapons and in a violent and dangerous manner, tied the arms and legs of Ethel Taylor, demanded money under threat of death, and took some $6 in old coins, all *in a violent and forcible manner* and with intent to rob.

Briefly stated, the evidence given by the prosecuting witness was that the appellant, whom she recognized, and another man whom she did not know came to her home when her husband was away, demanded her money, tied her on the bed, poured lighter fluid on the bed and threatened to set it afire if she did not disclose the whereabouts of her money, put adhesive tape over her eyes and mouth, and ransacked the house. The witness afterward missed several silver dollars and old coins.

The question as submitted to the jury by the instructions was whether the defendant "unlawfully, wilfully, feloniously and maliciously, with force and arms, with an offensive weapon, or instrument, did assault Ethel Taylor, or by menace, *or in any forcible and violent manner,* demand any money from said Ethel Taylor, with the felonious intent then and there to rob the said Ethel Taylor," etc. (Emphasis added.)

The arguments directed by appellant to the sufficiency of the evidence and the propriety of the instructions are essentially the same. The first is that the evidence did not show the use of a weapon, as

charged in the indictment. The second is that in the absence of such evidence there was no basis for inclusion of that theory in the instructions.

■ The crime denounced by KRS 433.150 can be committed in two different ways, (1) by an assault with an offensive weapon or instrument with intent to rob, and (2) by a demand of money or property in a forcible and violent manner with intent to rob. Little v. Com., 1933, 246 Ky. 805, 56 S.W.2d 526. In view of the facts of the case so much of the indictment as charged the first method was surplusage. The remainder of the indictment properly charged the second and was amply sustained by the evidence. See Com. v. Hightower, 1912, 149 Ky. 563, 149 S.W. 971, 972. The same comment applies to the instructions, which embraced both theories. But surplusage in the instructions may be prejudicial if it invites the possibility of conviction on a theory not sustained by the evidence. Cf. Roberson § 1876; Stanley's Instructions, §§ 765, 766; Norton v. Com., 1922, 196 Ky. 90, 244 S.W. 310, 314, and especially, Chappell v. Com., 1923, 200 Ky. 429, 255 S.W. 90, 92. Whether that situation existed under the instructions given in this case we find it unnecessary to decide, since the judgment must be reversed for the reason hereinafter set forth. However, upon another trial of the case the reference in the instructions to the use of a weapon should be omitted.

The appellant was placed in custody at Cincinnati, Ohio, on May 6, 1960, waived extradition and was indicted on May 7, 1960, and was released on bond the same day. His trial was set for May 20, 1960. He arranged to be represented by attorney William S. Tribell, who in turn associated his brother, J. J. Tribell, as assisting counsel. Both attorneys had heavy trial schedules, and on May 10, 1960, a motion for continuance was made, supported by affidavit showing that the press of previous trial commitments would prevent an adequate preparation of the matter for trial on the 20th. The motion was overruled at a

hearing on the next day. Appellant and William S. Tribell spent Saturday and Sunday, May 14 and 15, in Cincinnati seeking witnesses to establish appellant's presence in that city on March 17, 1960, at the time the crime was committed in Bell County, Kentucky. Meanwhile, the trial docket for May 20, 1960, listed several other cases ahead of this one, and it seems clear that counsel did not really expect to be forced to trial on that day.

On May 20 all of the other cases set were continued or disposed of without trials, and appellant's case was called up and the Commonwealth announced ready. Defense counsel asked and were granted time to prepare an affidavit and motion for continuance. The affidavit showed that both attorneys had appeared in court nearly every day during the week or so immediately preceding May 20 (though several of the matters did not result in trials). It recited the details of the trip to Cincinnati, gave the names of two witnesses there who allegedly would say that appellant was in Cincinnati at the time the crime was committed, but who could not be present on the day in question, and stated that those witnesses had furnished the names of other witnesses whom counsel had not yet been able to locate and interview. The affidavit did not set forth why the two witnesses could not be present or what efforts had been made to secure their attendance (at a later hearing, following the trial, it was disclosed that one of them resided in Newport, Ky.). Moreover, the appellant himself was at all times free to continue the search for witnesses even though counsel may have been detained by other matters. The judge was familiar with so much of the work of defense counsel as had taken place in his court and was of the opinion they had adequate time to prepare appellant's case. He therefore overruled the motion for continuance.

When the motion for continuance was overruled counsel advised appellant, in the presence of the court, that he would have to plead guilty or they would be unable to

represent him. The appellant, protesting his innocence, declined to plead guilty and stated he would have to discharge the attorneys, who then moved that they be permitted to withdraw as counsel. The court overruled this motion, whereupon the attorneys proceeded to leave the courtroom. The court then offered to appoint new counsel to conduct the defense, but appellant refused, stating that he preferred counsel of his own choice. A jury was impaneled and the case proceeded to trial at once. Appellant made no statements, offered no evidence, and did not question the witness for the prosecution. A verdict finding him guilty and fixing his punishment at 21 years followed. On the same day (the last day of the term), in order to preserve the appellant's rights on appeal, attorney William S. Tribell prepared and filed motion and grounds for new trial.

■ Findings made a part of the record show that in proceeding to trial without defense counsel the trial court believed from all the circumstances, including the attitude and remarks of counsel and the apparent lack of surprise on the appellant's part when they withdrew, that the walkout was planned and staged with appellant's foreknowledge. Certainly there are grounds for suspicion that this is true (it is hard to resist the inference that the entire maneuver was practiced with an eye on the recent decision in Schneider v. Com., Ky.1960, 332 S.W.2d 250), and, if so, it could be said that appellant voluntarily and advisedly waived his right to counsel. But that right, especially in a capital case, is too vital to be lost on the strength of a suspicion, and we must therefore assume that appellant was innocent of complicity in the walkout.

■ Even if appellant had accepted the appointment of counsel it would have been incumbent on the court to continue the case, since the right to counsel "means counsel with reasonable opportunity to prepare the case." Shelton v. Com., 1939, 280 Ky. 733, 134 S.W.2d 653, 658; Perkins

v. Com., Ky.1951, 305 S.W.2d 937; Woods v. Com., Ky.1957, 305 S.W.2d 935; Woosley v. Com., Ky.1955, 282 S.W.2d 625; Cass v. Com., 1930, 236 Ky. 462, 33 S.W.2d 332; Chenault v. Com., 1940, 282 Ky. 453, 138 S.W.2d 969. It is immaterial that he failed to ask for a continuance following the departure of his attorneys, because at that stage of the proceeding he was without counsel to advise him of his rights. Nor can it be held that he waived counsel by insisting on the right to choose one instead of accepting a court appointee. Had the court given him reasonable time to employ new counsel and he failed to do so the rejection of appointed counsel would have constituted a waiver, but he was not given that opportunity. The right of one charged with crime to be represented by counsel includes a fair opportunity to secure counsel of his own choice. Powell v. State of Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527, 532.

■ We do not sustain appellant's position that the trial court erred in overruling the motions (or either of them) for continuance. While reasonable minds may differ as to whether its discretion was wisely exercised, certainly there was no clear abuse. But we do find it necessary to reverse on the ground that, being denied a reasonable opportunity to secure a replacement of his own choice to represent him at his trial, the appellant did not receive a fair trial. Criminal Code of Practice, § 271, subd. 7.

The conduct of counsel in flouting the authority and obstructing the orderly process of the trial court in this case is indefensible, and they were properly fined for contempt. It is easy for a lawyer after a series of adversities in court to find comfort in assuming personal animosity on the part of the judge or prosecutor, or both; and equally hard to face the possibility that some or all of the fault may be his own. In any event, wherever the fault may lie, nothing is so destructive of the public confidence in the courts and the legal profession and, ultimately, of

the whole system of justice, as a public show of carping and contempt within the profession itself. We recognize the courage of counsel in this case and defend the right of any lawyer to disagree with the court so long as he keeps within the bounds of propriety. But the capacity to accept disappointment without bitterness should be a part of the standard courtroom equipment of every lawyer. No court wishes to refer the conduct of counsel to the bar association for disciplinary action, but that is the proper remedy should the aggravation transcend the adequacy of contempt proceedings.

The judgment is reversed with directions that a new trial be granted.