Joseph E. **SCAMAHORNE** and Charles **Plouvier**, Appellants,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

May 28, 1965.

Rehearing Denied Oct. 22, 1965.

See, also, Ky., 376 S.W.2d 686.

P. Joseph Clarke, Jr., Danville, for appellants.

Robert Matthews, Atty. Gen., Joseph H. Eckert, Asst. Atty. Gen., Frankfort, for appellee.

HILL, Judge.

Appellants were convicted of having burglary tools in possession under KRS 433.-120(2) and their punishment fixed at confinement for two years in the State Penitentiary. Appellants contend their constitutional rights have been violated because they were deprived assistance of counsel; the instructions should have defined "possession;" and evidence of possible uses of tools and types of crimes which could be committed with tools was inflammatory and prejudicial.

We shall discuss these grounds assigned for reversal in the order listed above.

First, we briefly review the facts. On February 5, 1964, about 1:15 A.M., two police officers of the city of Danville were making their routine patrol of business establishments and in doing so they drove to the rear of the Coca Cola Bottling Plant. They discovered a number of holes in a panel of one of the doors and proceeded to investigate. They found no one nearby and apparently believing that the persons who made the holes were close at hand, one of the officers went around one side of the building and the other took the opposite course. One of the officers discovered the two appellants, Joseph E. Scamahorne, age 49, and Charles Plouvier, age 18, hiding behind the shrubbery in front of the building.

Appellants first complain their constitutional right to assistance of counsel has been violated and that the verbal confessions of appellants were incompetent, prejudicial and should not have been admitted. The question of the constitutional right of indigent persons to have assistance of counsel is a troublesome one. This jurisdiction was one of the pioneers in providing counsel for indigent accused persons. This fact was noted in Carson v. Commonwealth, Ky., 382 S.W.2d 85, as follows:

"This jurisdiction has long held fast the fundamental right of an accused to be represented by counsel. Kentucky

Constitution § 11 specifically provides that an accused has the right to be heard by himself and counsel in all criminal prosecutions. This court has repeatedly held that the accused's right to counsel is an inviolable one, and may be waived only if done understandingly, intelligently, competently and voluntarily. Schneider v. Com., Ky., 332 S.W.2d 250; Roberts v. Com., Ky., 339 S.W.2d 640; Hart v. Com., Ky., 296 S.W.2d 212; 6 Ky.Digest 2, Criminal Law, ☜641."

It may be added, in connection with appellants' contention the confession should have been suppressed, that Kentucky has, since long before 1912, recognized the "presumption of innocence" and sought to protect accused persons by the enactment in 1912 of the "Anti-Sweating Act," now KRS 422.110, which we quote:

"No peace officer, or other person having lawful custody of any person charged with crime, shall attempt to obtain information from the accused concerning his connection with or knowledge of crime by *plying* him with questions, or *extort* information to be used against him on his trial by *threats* or other wrongful means, nor shall the person having custody of the accused permit any other person to do so. (2) A confession obtained by methods prohibited by subsection (1) is not admissible by evidence of guilt in any court. The trial judge shall determine the competency and admissibility of any alleged confession under the provisions of this section from evidence heard by him, independent of and without the hearing of the jury trying the case." (Our emphasis.)

Before attempting to determine at what particular time, in this case, appellants were entitled to the appointment of counsel, let us get a better picture of what transpired. Appellants were removed from jail to the office of the Chief of Police at 7:30 A.M., six hours after their arrest. The only persons present were Chief Everett Kidd and patrolman William Arnold. No warrant had been issued up to this time. Neither of the arresting officers was present. At a hearing in chambers, in the absence of the jury, at the trial in circuit court, the trial judge carefully examined Chief Kidd relative to whether there was any "sweating." He testified there were no threats, promises or "anything;" that the statement was voluntary. We quote from his testimony given in chambers:

"Q—Was it just a general discussion that you had during the time you were fingerprinting them?

"A—Yes, this questioning took place before the fingerprinting, but most of it was two questions that I asked him and, of course, he volunteered along as to the trip and the route they had taken from New Haven."

As the confession may relate to voluntariness and waiver of counsel, we quote further from Kidd's testimony given before the jury:

"Q—Just relate, if you will, what conversation you had with either or both of these men and the conversation that occurred in the presence of both?

"A—Their names and addresses were verified. Their activities before the occurrence at the Coca Cola plant—Mr. Scamahorne's statement was that on February 4th at approximately 8:30 A.M., Scamahorne and Plouvier left New Haven, Kentucky, came to Perryville by way of Springfield. Highway 150 was under construction at that time between Danville and Perryville and they detoured to Parksville, took Highway 300 from Parksville to Stanford. They were asked as to why they were going to Stanford

and Mr. Scamahorne said they had business in Stanford but refused to discuss that business. After taking care of that business, he further stated they continued on to Danville by way of 150 to the cross roads intersection of 150 and Highway 52, turning right on highway 52. Driving approximately one mile on the Lancaster road, he parked his automobile, the two men got out of the car and walked to the rear of the Coca Cola plant, carrying with them a sack of tools. They were also questioned as to why they were going into the Coca Cola plant and as to why they had these tools. Mr. Scamahorne stated that he had these tools in order that he might break into a safe or cabinet where he thought money might be kept in a building."

■ Passing the question of right of counsel for the moment let us see whether the verbal confession was proper. Prior to 1942, if the evidence was conflicting on question of voluntariness or "sweating," the issue was submitted to the jury. Commonwealth v. McIntosh, 257 Ky. 465, 78 S.W.2d 320 (1935); Crawford v. Commonwealth, 264 Ky. 498, 95 S.W.2d 12. Since KRS 422.110 was amended in 1942, the question must be decided by the trial court, and its decision thereon will not be disturbed unless supported by insufficient evidence. Tarrence v. Commonwealth, Ky., 265 S.W.2d 52 (1953).

■ Certainly the decision of the trial court in the present case finding the confession to be voluntary and given without fear or promise of reward was sufficiently supported by convincing evidence. In fact, we are impressed with the apparent fairness and consideration of the Chief of Police and the patrolman present. Had the Chief anticipated difficulty in solving this crime, he could have waited until the two

arresting officers were present to confront the appellants as they were interrogated. It appeared to be a casual, routine procedure, free of fear, pressure or duress. The details of the confession are strong evidence it was voluntary. We think this is a situation where the appellants thought the law had the "dead wood on them," so they concluded it best just to "come clean."

Now, were the appellants entitled to the appointment of counsel before this confession was made? The testimony shows, without contradiction, they did not ask for the appointment of counsel until after they had voluntarily confessed and detailed the crime. It was only when the Chief of Police asked them if they would sign a written statement that appellant, Scamahorne, refused and announced they wanted an attorney. Had the officers wanted to misrepresent any of the circumstances they could have just said they never asked for an attorney at all. So, we are convinced the appellants did not ask for an attorney before their voluntary confessions.

Counsel for appellants cite and quote from the dissenting opinion of Justices Douglas, Black and Brennan in Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958). We cannot accept this philosophy. This majority opinion in Crooker furnishes no guidance for the present case. In fact, the rule in Crooker is questionable in the light of later decisions, such as Escobedo, hereafter discussed.

■ Now, to the critical question, did appellants have the intelligence to know their right to have counsel and to waive that right? They had the intelligence to operate their automobile; leave it parked a mile from the crime; to grovel across a dark field where no one was expected to see them; to sack up a 25-pound sledge hammer, a crow bar, a screw driver and other tools; to get to the back of the building (Coca Cola) wherein there was a possibility there was money; to run and hide

behind the evergreens when the lights from the police cruiser appeared; to put up their hands when the officers flashed light on them, and ask the officers not to shoot.

We think the appellants were sufficiently intelligent to know that anything they admitted could be used. against them, and to know they had a right to counsel and a right to waive counsel.

Appellants rely on Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799, 93 A.L.R.2d 733. Gideon asked for and was refused counsel. He conducted his own defense. This was a noncapital felony in the State of Florida where a statute provided for counsel only in capital cases. It held Gideon entitled to counsel notwithstanding the statute.

Reference is made to Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L. Ed.2d 246. This case involved a confession or incriminating evidence obtained by the secret installation of radio transmitter in Massiah's automobile. This is not a parallel case to the case at bar, nor does it furnish authority to support appellants' contention.

Next, Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (decided 1964), is relied upon. Escobedo *demanded and was refused* access to his attorney. In fact, the attorney spent a number of hours trying to get into the room in which Escobedo was being interrogated. The nearest he was able to get to his client was when a door was opened he got a brief view and a wave from his client before the door was again closed. He was also subjected to long hours of interrogation and pressure as well as promises of protection. Escobedo is not the answer to our question. Appellants did not ask for counsel.

■ Concluding their argument on this phase, appellants cite State of California v. Dorado, 61 A.C. 892, 40 Cal.Rptr. 264, 394 P.2d 952. This case followed Massiah and Escobedo, and went further. It partly supports appellants' theory that their constitutional rights have been violated. Dorado did not ask for counsel, nor was he advised of his right to counsel or to remain silent. Dorado, a life termer, was given death for killing a fellow prisoner. The court reversed because Dorado was not advised of his right to counsel and to remain silent. The court found no merit in the state's argument that defendant must specifically request counsel. Each case should be decided on the particular facts of the case. In this case, the controlling question is, whether, in the absence of a request for counsel, was the right waived? We think it was waived. This being so, neither Massiah nor Escobedo requires us to go as far as the California court went in Dorado.

■ Appellants next assert the trial court should have defined "possession." Fennen v. Commonwealth, 240 Ky. 530, 42 S.W.2d 744 is cited. Fennen did not hold "possession" should be defined. It held that there *might* be a case where it would be necessary. Such a case is one where there is evidence that illegal property is found in a room of a tenant of a rooming house, where the landlord is charged with possession, contending the property belonged to the tenant. This is not such a case. Actually, the brace and bit was found at the very spot from which appellants were flushed out of the shrubbery; they were likely standing on it. We think this is possession.

Finally, objection is made that evidence of "possible use of the tools and types of crimes which could be committed was inflammatory and prejudicial."

■ We find the contention without merit. After a plea of not guilty the burden was on the Commonwealth to prove that the tools mentioned in evidence were "burglar" tools.

The judgment is affirmed.